## UNITED STATES v. VALNDZA.

No. 6853.

Circuit Court of Appeals, Sixth Circuit.

Feb. 4, 1936.

Frank Wiedemann, of Cleveland, Ohio, and Young Smith, of Washington, D. C. (Emerich B. Freed and Marc J. Wolpaw, both of Cleveland, Ohio, and Will G. Beardslee, Wilbur C. Pickett, and Randolph C. Shaw, all of Washington, D. C., on the brief), for the United States.

Dwite H. Schaffner, of Akron, Ohio, for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

■ Appellee recovered a judgment rendered upon a verdict in his favor under a contract of War Risk Insurance, which by its terms was in force up to May 31, 1919. On August 26, 1922, an award of disability compensation was made in appellee's favor by the United States Veterans' Bureau, under which he was granted compensation in the amount of $12 per month from April 26, 1919, and $80 per month from December 21, 1920. Up to the time that he re-

ceived the check pursuant to this rating (August 27, 1922), none of this money had been paid. Under the provisions of title 38, § 516, U.S.C., 38 U.S.C.A. § 516,[1] the policy therefore did not lapse until August 26, 1922. United States v. Vance, 48 F. (2d) 472 (C.C.A.8); United States v. Hendrickson, 53 F.(2d) 797 (C.C.A.10).

The court charged the jury that the appellee could recover if he became totally and permanently disabled prior to August 26, 1922, and no exception was taken to this charge.

Two questions are presented:

(1) Whether there is substantial evidence to support the verdict.

(2) Whether the court had jurisdiction.

The first question requires a brief review of the facts.

Appellee claimed that previous to entering the army he had no physical disability, and that some two months after Easter in 1918, while marching in France and carrying a pack of some fifty pounds, a shell exploded near him and he dropped on his stomach in a ditch. He stated that two men stepped on him, and that he felt pain, "sharp like somebody stabbed me in the back." He could not carry his pack afterwards, and from that time he had continual pain.

In December, 1920, appellee entered the Marine Hospital at Cleveland, Ohio, where he remained five months. In May, 1921, he was sent to the Polyclinic Hospital in New York City, where a bone graft was performed upon his spine. The finding on operation was that the spinous process of the fifth lumbar vertebra was so tightly impinged upon the sacrum that it was impossible to pass a blade of the scalpel between them. Appellee was admitted to the Reconstruction Hospital in New York City in March, 1922. At that time his spine exhibited ossification of the last three or four lumbar vertebrae which destroyed the motion of the joints. An orthopedic surgeon who treated him stated that appellee was then totally disabled, the flexibility of the spine in that region being generally destroyed. A diagnosis at the Cincinnati General Hospital in May, 1930, showed that appellee had a bone graft extending from the third to the fifth lumbar vertebra, fractured between the fourth and fifth lumbar vertebrae, and "marked rigidity of the lumbar segment of the spine. Palpation of this segment shows it to be very sensitive and painful." Several physicians testified that it would not be possible for appellee to engage in a gainful occupation without risk of serious personal injury.

This testimony was controverted by various medical witnesses, who testified that appellee could do work that would not require heavy lifting or bending, and also by his work record. Appellee was gainfully employed for substantial periods of time from 1919 to 1921. He explains this work record by saying that he was compelled frequently to lay off, and that he was subject to constant and severe pain while working.

In view of the uncontradicted testimony as to the injury, the admitted fracture of the spine, the operation in 1921, and the testimony of physicians who actually attended appellee prior to August 26, 1922, we cannot say that there was not substantial evidence sustaining the verdict of the jury.

On the second question, appellant contends that the court lacked jurisdiction because appellee did not bring suit within the time prescribed by title 38, § 445, U. S. C. 38 U.S.C.A. § 445. The action was not instituted until more than six years after the right accrued for which the claim is made and more than one year after July 3, 1930. The petition alleges that the claim was presented to the bureau and was re-

---

[1] § 516. "Where any person has, prior to June 7, 1924, allowed his insurance to lapse, or has canceled or reduced all or any part of such insurance, while suffering from a compensable disability for which compensation was not collected and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability was or is entitled to compensation remaining uncollected, then and in that event so much of his insurance as said uncollected compensation, computed in all cases at the rate provided by section 302 of the War Risk Insurance Act as amended December 24, 1919, chapter 16, Forty-first Statutes, page 371, would purchase if applied as premiums when due, shall not be considered as lapsed, canceled or reduced; and the Veterans' Administration is hereby authorized and directed to pay to said soldier, or his beneficiaries, as the case may be, the amount of said insurance less the unpaid premiums and interest thereon at 5 per centum per annum compounded annually in installments as provided by law. * * *"

jected, but fails to give the dates necessary to compute the period of suspension. Appellant urges therefore that a jurisdictional prerequisite is lacking and that the action is barred. The court, under the first paragraph of section 445,[2] has jurisdiction of the subject-matter. It has jurisdiction of the parties. The existence of the disagreement between the bureau and the insured is a jurisdictional prerequisite to an action on a policy of War Risk Insurance, (United States v. Knott, 69 F.(2d) 907 (C.C.A.6) but doubt was indicated in that case as to whether the statute of limitations must be specially pleaded. The provision as to suspension of the limitation arises under the second paragraph of section 445,[3] which deals entirely with the subject of limitation. The wording is markedly different from that employed in the statute discussed in the case of Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 83, 31 L.Ed. 128, where the provision is that the claim "shall be forever barred." Here the statute simply states that "No suit * * shall be allowed" after the time limited in the section. In the Finn Case, 123 U.S. 227, at page 232, 8 S.Ct. 82, 31 L.Ed. 128, the Supreme Court recognizes the general rule that limitation does not operate by its own force as a bar, but is a defense that must be pleaded.

■■ If the general rule applies here, the Government should have pleaded the limitation. Neither in its pleading nor in any manner before or at the trial did it raise the question. If objection had been made while the case was pending in the District Court, amendment and proof might have been permitted showing that the action was filed in time. Under such circumstances as between private individuals, it is usually held that the right to make the objection has been waived. However, Government officers may not waive provisions as to War Risk Insurance. Birmingham v. United States, 4 F.(2d) 508 (C.C.A.8); Crawford v. United States, 40 F.(2d) 199 (C.C.A.2); Wilber National Bank v. United States, 69 F.(2d) 526 (C.C.A.2). This court also has declared that statutes of limitation must be strictly construed in favor of the sovereign. Board v. Commissioner, 51 F.(2d) 73, 76 (C.C.A.6).

■ We conclude, therefore, that while the question · is not free from difficulty, the statutory requirement as to limitation could not be waived, and that the petition should have pleaded facts showing that the statute was suspended during consideration of the claim in the bureau.

The judgment is reversed and the case remanded with permission to appellee to amend his petition in the District Court to allege facts showing that the limitation was suspended for the period elapsing between the filing in the bureau of the claim sued upon and the denial of such claim by the director, and was timely brought, if he may do so; and if when such allegations are made they are not traversed or are shown to be true, appellee may have judgment upon the original verdict.

---

[2] Section 445, par. 1: "In the event of disagreement as to claim, including claim for refund of premiums, under a contract of insurance between the Veterans' Administration and any person or persons claiming thereunder an action on the claim may be brought against the United States either in the Supreme Court of the District of Columbia or in the district court of the United States in and for the district in which such persons or any one of them resides, and jurisdiction is hereby conferred upon such courts to hear and determine all such controversies."

[3] Section 445, par. 2: "No suit on yearly renewable term insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made or within one year after July 3, 1930, whichever is the later date, and no suit on United States Government life (converted) insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made: Provided, That for the purposes of this section it shall be deemed that the right accrued on the happening of the contingency on which the claim is founded: Provided further, That this limitation is suspended for the period elapsing between the filing in the Veterans' Administration of the claim sued upon and the denial of said claim by the Administrator of Veterans' Affairs."