BRYAN et al. v. UNITED STATES.*

No. 1710.

Circuit Court of Appeals, Tenth Circuit.

Oct. 19, 1938.

*Writ of certiorari denied 59 S.Ct. 364, 83 L.Ed. ——.

G. C. Spillers, of Tulsa, Okl. (Chas. L. Yancey and John S. Carlson, both of Tulsa, Okl., on the brief), for appellants.

Frederic G. Rita, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Whit Y. Mauzy, U. S. Atty., and Chester A. Brewer, Asst. U. S. Atty., both of Tulsa, Okl., on the brief), for the United States.

Before · PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

Bryan, Bostick, and Sisk,[1] as trustees of the Imperial Royalties Company, a com-

mon law trust, brought this suit against the United States to recover $299,990.32, alleged overpayments of income taxes for the years 1923 to 1929, both inclusive.

The amended bill of complaint contains seven counts. Each asserts a claim for overpayment of tax for one of such years. They differ only as to the amounts of taxes paid and the date of the respective payments.

The trial court sustained a demurrer to the amended bill of complaint and entered judgment dismissing the complaint. The trustees have appealed.

The facts alleged in the amended complaint, and which for the purpose of testing the sufficiency of the amended complaint on demurrer must be accepted as true, are these: ·

The Royalties Company is a common law trust organized under the laws of Oklahoma in the year 1920. John E. Horn, E. S. Horn, and H. O. Bland were its original trustees. The Horns controlled and managed the business of the trust. Bland acted only in a nominal capacity. The Horns and Bland continued as trustees of the Royalties Company until the year 1933, when the certificate holders brought an action in the district court of Tulsa County, Oklahoma, for the removal of the Horns and Bland as trustees for alleged mismanagement, and for the appointment of a receiver. On or about November 6, 1933, the Horns and Bland resigned as trustees, and the state court appointed a receiver of the trust estate. The receiver caused an audit to be made of the books, records, and affairs of the trust estate. The audit was completed on or about October 31, 1934. It disclosed that the compensation to be received by the Horns as trustees was based on the number of beneficial certificates of interest in the trust sold by them, and that in order to promote the sale of such certificates and increase their personal gain the Horns for the years 1923 to 1929, inclusive, made incorrect income tax returns for the Royalties Company to the Collector of Internal Revenue showing earnings largely in excess of those actually made by the trust estate, and caused the Royalties Company to pay income taxes based on such inflated returns.

In making such returns and causing payment of taxes thereon the Horns acted for their personal interests and adversely to

---

[1] Hereinafter referred to as the trustees.

the trust estate. Bland had no notice or knowledge thereof.

The books and records of the Royalties Company were audited by the agents and representatives of the United States for each of the years 1923 to 1929, inclusive, and such agents and representatives learned of such incorrect and excessive returns and of the fraud being practiced on the trust estate by the Horns. The United States, after knowledge thereof on the part of its agents and representatives, accepted the excessive tax payments predicated on such inflated returns.

The Horns and the agents and representatives of the United States fraudulently concealed such incorrect returns and excessive payments of taxes.[2]

The present trustees were duly appointed by the district court of Tulsa County in the action referred to above.

The trustees on June 9, 1936, and within two years from the date of the discovery of the incorrect returns and the excessive payment of income taxes for the years above referred to, filed claims for overpayments with the Commissioner of Internal Revenue for each of such years, which claims were disallowed by the Commissioner on October 8, 1936.

By the provisions of Section 284 (b) (1) of the Revenue Act of 1926, 44 Stat. 66, claims for refund of income taxes paid for the years 1923 and 1924 are required to be filed within four years after payment of the tax, and claims for refund of income taxes paid for the years 1925, 1926, and 1927 are required to be filed within three years after payment of the tax. By the provisions of Section 322(b) (1) of the Revenue Act of 1928, 45 Stat. 861, 26 U.S. C.A. § 322 note, claims for refund of income taxes paid for the years 1928 and 1929 are required to be filed within two years after payment of the tax.

The pertinent part of Section 1103 of the Revenue Act of 1932, 47 Stat. 286, 26 U.S.C.A. §§ 1672–1673, reads:

"(a) Section 3226 of the Revised Statutes, as amended, is amended to read as follows:

"Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of two years from the date of mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates."

It will be noted that the claims for refund for the taxes paid for the years 1923 and 1924 were filed more than four years after the payment of such taxes, that the claims for refund for taxes paid for the years 1925, 1926, and 1927 were filed more than three years after the payment of such taxes, and that the claims for refund for taxes paid for the years 1928 and 1929 were filed more than two years after the payment of such taxes. Hence, claims for refund for the alleged overpayments have not been duly filed with the Commissioner according to the provisions of law in that regard. Counsel for the trustees contend that the alleged concealment of the Horns and the agents and representatives of the United States tolled the running of the time for filing the claims for refund. They rely upon the equitable doctrine that when a party against whom the cause of action exists in favor of another, by fraud or concealment prevents such other from obtaining knowledge thereof, the statute of limitations will commence to run only from the time the cause of action is discovered or

---

[2] No affirmative acts of concealment on the part of the agents of the United States are alleged. The allegations of count one, illustrative of all the counts, read as follows:

"The said sum of $173.79 in excess income tax for the year 1923 was intentionally concealed by the income tax auditor who was the agent and representative of the defendant, the United States government for the purpose of fraudulently appropriating the same to the use and benefit of the defendant, United States government."

might have been discovered by the exercise of diligence.

■ Immunity from suit is an attribute of sovereignty. The United States can only be sued by its own consent clearly given by legislative act.[3] When Congress gives its consent to be sued it does not grant a right, but merely accords a privilege.[4] Statutes granting the right to sue the United States are to be strictly construed.[5] Congress may impose such conditions and restrictions on the right to sue the United States as it deems proper.[6] A suit may not be maintained against the United States in any case not clearly within the terms of the statute by which it consents to be sued. The courts cannot go beyond the letter of such consent.[7]

■ The provision of Section 1103, supra, that "No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax * * * until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard," imposes a condition precedent to the right to maintain such a suit or proceeding.[8] Such provision is not merely a statute of limitation, but a condition attached to the right to sue.[9]

■ It is our opinion that the well-settled principles to which we have adverted compel the conclusion that literal compliance with Section 1103, supra, is a prerequisite to the right to maintain a suit for recovery of overpayments of income taxes.

■ There is another reason why the alleged concealment did not toll the running of the time to file claims for refund as against the United States. It was not part of the duties of the agents and representatives of the United States to conceal incorrect income tax returns and excessive payments of income taxes. In so doing, they clearly acted without and beyond the scope of their authority as representatives of the United States. The United States is not liable for unauthorized wrongs inflicted by its officers or agents on its citizens, although occurring while engaged in the discharge of official duties. Schillinger v. United States, 155 U.S. 163, 167, 15 S.Ct. 85, 39 L.Ed. 108. The fraudulent concealment must have been that of the party sought to be charged, and a fraudulent concealment by one who stands in the relation of agent to another will not bind the principal, unless the latter induced or had knowledge thereof.[10]

[3] Stanley v. Schwalby, 162 U.S. 255, 269, 270, 16 S.Ct. 754, 40 L.Ed. 960; Id., 147 U.S. 508, 512, 13 S.Ct. 418, 37 L.Ed. 259;

Morrison v. Work, 266 U.S. 481, 486, 45 S.Ct. 149, 151, 69 L.Ed. 394.

[4] Lynch v. United States, 292 U.S. 571, 581, 54 S.Ct. 840, 844, 78 L.Ed. 1434.

[5] United States v. Lindholm, 9 Cir., 79 F.2d 784, 787, 103 A.L.R. 213;

Kemp v. United States, 7 Cir., 77 F.2d 213, 214.

[6] Reid v. United States, 211 U.S. 529, 538, 29 S.Ct. 171, 53 L.Ed. 313;

United States v. Alberty, 10 Cir., 63 F.2d 965, 966;

Munro v. United States, 303 U.S. 36, 58 S.Ct. 421, 82 L.Ed. 633.

[7] United States v. Michel, 282 U.S. 656, 659, 51 S.Ct. 284, 285, 75 L.Ed. 598;

Price v. United States and Osage Indians, 174 U.S. 373, 375, 376, 19 S.Ct. 765, 43 L.Ed. 1011;

Eastern Transportation Co. v. United States, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472;

United States v. Turner, 8 Cir., 47 F. 2d 86, 87;

United States v. Preece, 10 Cir., 85 F. 2d 952, 953.

[8] Tucker v. Alexander, 8 Cir., 15 F.2d 356, 357;

Red Wing Malting Co. v. Willcuts, 8 Cir., 15 F.2d 626, 627, 634, 49 A.L.R. 459;

Kings County Savings Institution v. Blair, 116 U.S. 200, 205, 6 S.Ct. 353, 29 L.Ed. 657;

United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 273, 51 S.Ct. 376, 378, 75 L.Ed. 1025;

Rock Island, Arkansas & L. R. Co. v. United States, 254 U.S. 141, 143, 41 S. Ct. 55, 56, 65 L.Ed. 188.

[9] Bartlesville Zinc Co. v. Mellon, 7 Cir., 56 F.2d 154, 155;

United States ex rel. Rauch v. Davis, 56 App.D.C. 46, 8 F.2d 907, 909;

Knickerbocker Fuel Co. v. Mellon, 2 Cir., 22 F.2d 500, 501;

Finn v. United States, 123 U.S. 227, 232, 8 S.Ct. 82, 31 L.Ed. 128.

[10] Wood v. Williams, 142 Ill. 269, 31 N.E. 681, 683, 34 Am.St.Rep. 79;

Stevenson v. Robinson & Brooks, 39 Mich. 160;

School Dist. of City of Sedalia v. De Weese, C.C.Mo., 100 F. 705, 710;

Campbell v. Vining, 23 Ill. 473, 481, 482 (Orig.Ed. 525);

Wood on Limitations, 4th Ed., Vol. 2, § 276f(3);

Contra, see Lightner Mining Co. v. Lane, 161 Cal. 689, 120 P. 771, 777, Ann.Cas. 1913C, 1093.

Finally, to constitute fraudulent concealment that will toll the running of the statute of limitations, unless there is a fiduciary or other relation imposing a duty to make disclosure, some affirmative act of concealment is necessary and mere silence is not sufficient.[11] Here, the amended petition does not allege any actual artifice or action of an affirmative character on the part of the agents and representatives of the United States.

The judgment is affirmed.

---

[11] Bates v. Preble, 151 U.S. 149, 159–161, 14 S.Ct. 277, 38 L.Ed. 106;

Wood v. Carpenter, 101 U.S. 135, 143, 25 L.Ed. 807;

Arkansas Natural Gas Co. v. Sartor, 5 Cir., 78 F.2d 924, 929;

Despeaux v. Pennsylvania R. Co., C.C.Pa., 87 F. 794;

Deemer v. Weaver, 324 Pa. 85, 187 A. 215, 216;

Maloney v. Brackett, 275 Mass. 479, 176 N.E. 604, 606.